NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
29483
30-AUG-2013
09:38 AM

NO. 29483

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


GALE SCUDDER, Plaintiff/Counterclaim Defendant-Appellant, v.
FRANK PIERCE, III; NANCY STEINECKE; and E KOMO MAI SPORT
HORSES, LLC, Defendants/Counterclaimants-Appellees,
and
DAVID W. LACY; LACY and JACKSON, LLLC, et al., Defendants

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 06-1-0187)


MEMORANDUM OPINION
(By: Foley, Presiding Judge, Leonard and Reifurth, JJ.)

Plaintiff/Counterclaim Defendant-Appellant Gale Scudder
("Scudder") appeals from the September 5, 2008 Findings of Fact,
Conclusions of Law and Order Granting Defendants Frank Pierce,
III, Nancy Steinecke and E Komo Mai Sport Horses Motion Regarding
Equitable Claims ("Order re Equitable Claims"); the September 8,
2008 Final Judgment; the October 30, 2008 Order Granting in Part
Plaintiff Gale Scudder's Rule 54(d), Hawaii Rules of Civil
Procedure Motion for Attorney's Fees and Costs ("Order Granting
in Part Fees and Costs"); and the October 30, 2008 Order Denying
Plaintiff Gale Scudder's Rule 59(e), Hawaii Rules of Civil
Procedure Motion to Alter or Amend the Final Judgment Entered on
September 8, 2008, entered in the Circuit Court of the Third
Circuit ("Circuit Court").[1]

Based on the record and the arguments asserted by the
parties, we vacate the Order re Equitable Claims, the Final
Judgment, and the deemed denial of Scudder's motion for
attorneys' fees and costs, and remand for further proceedings

---

[1]    The Honorable Ronald Ibarra presided.

consistent with this opinion.

I.    Background

    A.    Complaint

On June 15, 2006, in the Circuit Court, Scudder filed the Complaint against Defendants/Counterclaimants-Appellees Frank Pierce, III ("Pierce") and Nancy Steinecke ("Steinecke") (collectively, "Lessees"), E Komo Mai Sport Horses, LLC ("E Komo Mai") (Lessees and E Komo Mai, collectively, "EKM Defendants"), and Defendants David W. Lacy ("Lacy") and Lacy and Jackson, LLLC (collectively, "Lacy Defendants") ("Complaint"). Scudder alleged as follows:

Prior to September 1, 1995, Lessees operated an equestrian-services business under the name E Komo Mai Sport Horses on property owned by Hawai'i Preparatory Academy ("HPA"), where they provided horse care and riding services to Scudder, among other clients. On or before September 1, 1995, Lessee's lease on the HPA property was terminated by HPA.

On or before September 1, 1995, Gromel Partners, L.P. ("Gromel"), controlled by Scudder and her family members, owned approximately thirty acres of real property in North Kohala, adjacent to Scudder's own ranch and residence ("Subject Property"). Lessees inspected the Subject Property and informed Scudder that they would like to reside and operate their business there: Scudder told Lessees she did not know what to include in a legal agreement, but Pierce, who claimed that he was experienced with leases, offered to and did draft the original lease agreement between Gromel and the Lessees for use of the Subject Property ("Lease").

According to Scudder, the Lease consisted of a few sentences and stated that Gromel leased the Subject Property to Lessees for a term of five years at $1,000.00 per month and that Lessees had an option for one additional five-year term. Scudder lost her copy of the Lease, but did not remember signing the standard form agreement that Pierce and Steinecke later claimed that she signed.

2

From September 1, 1995 until January 10, 2005, Lessees cared for Scudder's horses, with Scudder paying only for feed and any medication. From time to time, Lessees, claiming insolvency, would request that Scudder voluntarily pay or loan money to Lessees for various reasons, including purchasing a horse from Lessees, purchasing a truck for them, helping defray costs for maintaining Scudder's horses, and enabling Lessees to pay their taxes.

In 1997, Steinecke, citing their financial condition, asked Scudder if Lessees might defer rental payments indefinitely. Scudder agreed.[2] Lessees did not resume paying monthly rent until February 2005. Furthermore, in 1999, Scudder paid $500,000 to construct an arena and improvements on the Subject Property for the benefit of Lessees' business.

On March 15, 1998, Pierce presented Scudder with what purported to be a written addendum to the Lease between Gromel, Pierce, and Steinecke, ("First Lease Amendment") which Scudder signed. The First Lease Amendment provided that as of August 31, 2000, tenant had the option to renew the Lease for up to two additional five-year periods at a monthly rent of $1,000. On May 9, 2005, Pierce presented Scudder with what purported to be two further written addenda to the Lease. The first was an addendum to the Lease between Gromel/Scudder, and Pierce and Steinecke, dba E Komo Mai Sports Horses ("Second Lease Amendment"), which Scudder signed. The second was an addendum to the Lease between Scudder, and Pierce and Steinecke, dba E. Komo Mai Sports Horses ("Third Lease Amendment"), which Scudder also signed. The Second and Third Lease Amendments differed only in the identity of the Lessor and provided that as of May 1, 2005, tenant had the option to renew the Lease for up to three five-year periods at a monthly rent of $1,000.

In February 2005, Lessees began to bill Scudder for the boarding, care, and maintenance of her horses — in excess of

_____

[2]    According to testimony presented at trial, Steinecke thanked her and said: "you don't have to pay anything any more," which Scudder understood to mean that she no longer would be asked to pay for horse-related expenses above out-of-pocket expenses.

$4,000.00 per month.[3] Scudder objected, but paid the bills through July 2005, after which time she refused to pay. In response, Lessees refused to take care of Scudder's horses, showed Scudder alleged unsigned contracts for the care of her horses, and presented her with a bill for more than $150,000.00 for caring for her horses for the previous ten years.

Scudder's Complaint asserted the following counts,[4] some of which would properly be characterized as defenses rather than causes of action: (1) no contract formation, (2) contract invalid as a result of mistake, (3) fraud in the inducement, (4) summary possession, (5) fraud, (6) breach of fiduciary duty or confidential relations, (7) undue influence, (8) breach of contract, (9) unjust enrichment, (10) unfair and deceptive trade practices, (11) legal malpractice, and (12) punitive damages.[5]

B.    Counterclaim

On July 7, 2006, EKM Defendants filed a counterclaim against Scudder ("Counterclaim"), alleging as follows:

Between September 1995 and October 1998, Scudder boarded her horses with EKM Defendants, agreeing to pay related board and fees. During this time, Scudder received bills and paid for "all agreed upon additional charges" for her horses,

---

[3]    Evidence presented at trial indicated that for a period of about six years, beginning just before they moved from HPA to the Subject Property, Lessees retained Ardis Kuniyoshi Ono to provide basic bookkeeping services to help "organize [their] books." Ms. Ono was aware that Lessees had not been billing their clients for an extended period, "they did not keep records[,]" and any records they kept "were not very good and they were certainly not detailed." Ms. Ono had conversations with Steinecke and Pierce at the time about the fact that they were planning on sending out statements that were more than a year old. According to Ms. Ono, "seeing as how they didn't keep detailed records, I didn't think they should send that. I mean no good business sends out statements that long." Ms. Ono warned Steinecke that "you can't bill people for things like, oh, I held the horse at such and such date when there was no detailed record that said that really." Ms. Ono noted that "[t]here came a point when they sent out bills and they were outrageous and there was no way to check that all those services had been rendered." Consistent with Ms. Ono's testimony, Scudder claimed to have had a conversation with Pierce and Steinecke in the summer of 2004 in which Pierce stated that "not only did [the defendants] not have any books, but that they had not done their books for a period of five or six years."

[4]    Scudder dismissed unenumerated conspiracy claims against all defendants.

[5]    The claims against the Lacy Defendants were settled before trial.

including extra feed, treatment for injuries, handling for the veterinarian, supplies, medications, trailering, grooming, hoof trimming, and lessons. From 1998, Scudder also paid for blanketing and unblanketing. Scudder received bills and paid for board and additional charges from October 1998 through December 1999.

From September 1995 to December 1999, EKM Defendants paid rent to Scudder. However, in January 2000, Scudder and EKM Defendants reached an oral agreement whereby EKM Defendants' rent would be offset against Scudder's obligations related to the boarding and care of her horses. As of the date of the Counterclaim, EKM Defendants claimed that Scudder owed them more than $160,000.00.

EKM Defendants asserted claims against Scudder for: (1) breach of contract, (2) quantum meruit, (3) fraudulent inducement, (4) punitive damages, and (5) unfair and deceptive trade practices.

C.    Motion in Limine

On March 10, 2008, EKM Defendants filed several motions in limine. The sixth motion ("Motion in Limine No. 6") included a request for a Hawaii Rules of Evidence Rule 104 hearing, and sought an order barring Scudder from presenting any evidence and/or the testimony of proposed expert witness, Stewart H. Hussey ("Hussey"), "regarding incomplete and deficient appraisals and valuations at the trial in this case." Scudder proposed to present Hussey to testify about the rental value of the Subject Property.

EKM Defendants argued that Motion in Limine No. 6 should be granted because Hussey's report stated that it was a "'preliminary report,'" that "'the results of this analysis are NOT considered a full, [Uniform Standards of Professional Appraisal Practice ("USPAP")] compliant appraisal,'" and that "'[t]his report is not suitable for lending or other purposes.'" In support, the EKM Defendants submitted a letter dated May 28, 2007, from Hussey to Scudder's counsel, which urged counsel to "[p]lease consider this report a preliminary, 'essential

5

findings' report only. . . . I STRONGLY recommend converting this basic market data into a full, USPAP-compliant rent survey report[.]" "Otherwise," Hussey warned, "an opposing attorney could undermine the credibility of the data herein in a deposition and/or cross examination procedures by pointing out how the report fails to comply with USPAP requirements."

On April 2, 2008, the Circuit Court granted Motion in Limine No. 6 on the basis that the assignment that Hussey was given did not comply with USPAP and, although Hussey performed a follow-up investigation and inspection of the property, those results were not provided in any written supplemental report.

D.    Judgment as Matter of Law as to Steinecke

A trial was held before a jury. While legal claims were presented for the jury's determination, equitable claims were "submitted to the jury as an advisory jury as the trial court reserved the equitable issues for its determination."

On April 9, 2008, Scudder rested her case. EKM Defendants moved for judgment as a matter of law ("JMOL"). The Circuit Court granted the motion as to counts asserted against Steinecke for fraudulent inducement, breach of fiduciary duty, and unfair and deceptive trade practices, but, without giving any explanation for the different treatment, denied the motion as to Pierce and E Komo Mai.

E.    Special Verdict Form

With the jury limited to addressing Scudder's claims against Pierce and E Komo Mai, it completed the Special Verdict Form ("Verdict") on April 15, 2008. The jury found that (1) there was no meeting of the minds between Scudder and the EKM Defendants on the essential terms of a lease effective September 1, 1995; (2) there was no meeting of the minds between the EKM Defendants and Scudder on the essential terms of oral agreements for horse-care services; (3) Pierce engaged in unfair or deceptive acts or practices in the conduct of his trade or commerce in connection with horse-care provided to Scudder; (4) Pierce breached his fiduciary or confidential relationship with

Scudder and/or Grommel arising from the lease effective September 1, 1995, the First Lease Amendment, the Second Lease Amendment, and the Third Lease Amendment; (5) Pierce fraudulently induced Scudder and/or Grommel to enter into the lease effective September 1, 1995, and three lease addenda; (6) EKM Defendants never repaid Scudder for a $15,000.00 loan in 2004 or a $25,000.00 loan in 2005; (7) EKM Defendants' horse-care-services agreement and written or oral lease agreements and addenda came within the Statute of Frauds; (8) Scudder waived rent; (9) Scudder ratified the Second Lease Amendment, but no other lease or addenda; and (10) the Third Lease Amendment was not a novation of the Lease.

      F.    Findings of Fact, Conclusions of Law, and Order on Equitable Claims

On May 5, 2008, EKM Defendants filed their motion regarding equitable claims after jury verdict ("Motion on Equitable Claims"). EKM Defendants argued that they were entitled to quantum meruit, seeking $161,052.62 for horse-care services; to extend the lease to 2020 per the jury's finding that Scudder ratified the Second Lease Amendment; and a ruling that Scudder waived the collection of rent.

On September 5, 2008, the Circuit Court entered the Order re Equitable Claims. The Circuit Court found, in pertinent part, that:

> 1. [Scudder] and [EKM] Defendants had entered in to a Lease and various addenda ("Lease Agreements") commencing in September of 1995 for [the Subject Property].
>
> . . . .
>
> 4. [Scudder] . . . Pierce and Steinecke were close personal friends for many years with the common bond of training and competing purebred horses on the Big Island of Hawaii, and the business relationships between the parties were informal and based on understandings for more than a ten (10) year period.
>
> 5. [Scudder] boarded up to five (5) to six (6) horses with [E Komo Mai], and by conduct paid for numerous services, including but not limited to board, feed, medicines, training, lessons, etc. ("horse care").
>
> 6. This relationship between the parties had continued for many years, prior to September of 1995.
>
> 7. [Scudder] and [EKM] Defendants continued with the Lease

7

Agreements from 1995 until the present, and [Scudder] through her course of conduct throughout years established an understanding of the lease terms and ratified the agreements.

8. The parties had a disagreement regarding billings for horse care services claimed by [EKM] Defendants and eventually [Scudder] claimed a dispute regarding the lease arrangements.

9. In a letter dated July 9, 2005, [Scudder] set forth her position regarding the gifts and arrangements of the parties and acknowledged that she waived rent for the subject property.

10. . . . Pierce and Steinecke testified and submitted itemized entries recording the services provided to [Scudder] for horse care services.

11. [EKM] Defendants testified that [Scudder] was advised and was aware of the posted board rates for services that were updated, and testified as to the amounts that were due and owing.

12. [Scudder] acknowledged that she was aware of the posted board rates related to horse care.

13. [EKM] Defendants testified and claimed that [Scudder] owed $161,052.62, and that the horse care services were actually provided to [Scudder], the rates and services were reasonable, and that [Scudder] knew that these services were provided to her horses on her behalf.

14. [Scudder] did not dispute testimony that the horse care services were actually provided to [Scudder], that the rates and services were reasonable, or that she knew that these services were provided to her horses on her behalf.

15. [Scudder] testified that she believed that she never agreed to pay for these services, only for feed and medicine, although [Scudder] paid for the disputed services for a period of months.

16. . . . Pierce testified that in the billing for $161,052.62, that $55,000.00 of that amount was for labor provided by him alone, for work done on the horse arena, unrelated to horse care.

17. The advisory jury expressly found that [Scudder] had waived her right to the collection of any rent and at this time the Court so finds.

18. The advisory jury found that [Scudder], as the new owner, or in her individual capacity ratified the lease and [Second Lease Agreement] and at this time the Court so finds.

(Citations omitted).

The Circuit Court made the following pertinent conclusions of law:

3. Count II of the Counterclaim seeks $161,052.62 under a theory of *quantum meruit*.

. . . .

8

6. [Scudder] testified that she took 4-6 horses to Defendants, took riding lessons, and received boarding and care for her horses for a period of at least five (5) years. [Scudder] knew that these services were being provided to her, and under cross examination did not contest that the services were provided or that she had received the benefit without paying for such benefit.

7. [Scudder] received the benefit of horse care for her horse [sic] and it would be unjust for her to retain the benefits conferred on her in this situation.

. . . .

10. [Scudder] had advised Defendants in writing that she had agreed to provide them with free rent for a period of years.

11. The advisory jury had determined that there was a waiver of rent by [Scudder] and this Court so adopts.

. . . .

14. The advisory jury found and this Court so adopts that [Scudder], as the new owner, or in her individual capacity ratified the lease and [Addendum 2].

(Citations omitted).

The Circuit Court therefore ordered:

1. $106,052.62 . . . is awarded to [EKM Defendants Steinecke & E Komo Mai] for their equitable claim in *quantum meruit* for unjust enrichment for horse care services; and,

2. [Scudder] is not entitled to any past rent having waived her right to collect rent until entry of final judgment in this case; and,

3. [Scudder] and [EKM] Defendants have an agreement involving the subject property as [Scudder] ratified [the Second Lease Agreement] setting rent at $1,000.00 . . . per month until the year 2020; and,

4. The Court denies all other claims/defenses/counterclaims with prejudice.

G.     Final Judgment

On September 8, 2008, the Circuit Court filed the Final Judgment, entering judgment in favor of Scudder on her breach-of-contract claim for $40,000.00 and entering judgment in favor of Scudder and against Pierce on the unfair-and-deceptive-trade-practices claim but without a monetary award. The Circuit Court also entered judgment on the equitable claims consistent with the Order re Equitable Claims.

H.    Attorneys' Fees and Costs

On September 22, 2008, Scudder filed her Rule 54(d), Hawaii Rules of Civil Procedure motion for attorney's fees and costs ("Fees and Costs Motion") pursuant to Hawai'i Rules of Civil Procedure ("HRCP") Rule 54(d) and various statutory provisions.  Scudder argued that she was the prevailing party and was entitled to $315,947.26 in attorneys' fees and $40,399.88 in costs.

The Order Granting in Part Fees and Costs granted the Fees and Costs Motion in part as to Scudder's breach-of-contract claim but denied it as to the remainder.  The order did not state how much money was awarded to Scudder.

II.  Points of Error

On appeal, Scudder contends that the Circuit Court erred in (A) granting JMOL in favor of Steinecke, (B) granting equitable relief that was inconsistent with the jury's verdict, (C) granting the Motion in Limine, and (D) partially denying Scudder's motion for attorneys' fees and costs.

III. Standards of Review

Judgment as a matter of law

"A trial court's ruling on a motion for judgment as a matter of law is reviewed *de novo*." *Ray v. Kapiolani Med. Specialists*, 125 Hawai'i 253, 261, 259 P.3d 569, 577 (2011) (citing *Miyamoto v. Lum*, 104 Hawai'i 1, 6-7, 84 P.3d 509, 514-15 (2004)).

> A motion for judgment as a matter of law may be granted only when after disregarding conflicting evidence, giving to the non-moving party's evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in the non-moving party's favor, it can be said that there is no evidence to support a jury verdict in his or her favor.

*Id.* (quoting *Miyamoto*, 104 Hawai'i at 7, 84 P.3d at 515) (brackets omitted).

Equitable relief

"The relief granted by a court in equity is discretionary and will not be overturned on review unless the circuit court abused its discretion by issuing a decision that clearly exceeds the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of the appellant." *Aickin v. Ocean View Invs. Co.*, 84 Hawai'i 447, 453, 935 P.2d 992, 998 (1997) (quoting *AIG Hawai'i Ins. Co. v. Bateman*, 82 Hawai'i 453, 457, 923 P.2d 395, 398 (1996)) (brackets omitted).

Findings of Fact

Findings of fact are reviewed under the clearly erroneous standard. *Id.* (citing *Dan v. State*, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994).

Evidentiary rulings

> Different standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard.

*Tabieros v. Clark Equip. Co.*, 85 Hawai'i 336, 350-51, 944 P.2d 1279, 1293-94 (1997) (internal quotation marks, citations, and brackets omitted) (quoting *State v. Arceo*, 84 Hawai'i 1, 11, 928 P.2d 843, 853 (1996)).

IV.  Discussion[6]

A.   Scudder's breach-of-fiduciary-duty, unfair-or-deceptive-trade-practices, and fraudulent-inducement claims

Scudder argues that the Circuit Court erred in granting JMOL to Steinecke on Scudder's breach-of-fiduciary-duty, unfair-or-deceptive-trade-practices, and fraudulent-inducement claims

---

[6]    Scudder's opening brief addresses a multitude of disparate arguments, many of which appear incomplete, lack substance, or fail to comply with Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28(b)(7). We attempt to discern and address those arguments where possible.

after the conclusion of Scudder's case-in-chief when it denied JMOL to Pierce on those same claims. Scudder presents several facts that she contends show that Steinecke played a role in the allegedly fraudulent or tortious conduct.

Here, for Scudder to show that the Circuit Court erred in granting Steinecke JMOL on the breach-of-fiduciary-duty claim, she would have had to show that, viewing the evidence in a light most favorable to Scudder, Scudder had established a *prima facie* case against Steinecke for breach of fiduciary duty. Scudder, however, does not provide any analysis showing that the evidence was sufficient to establish a prima facie case against Steinecke for breach of fiduciary duty; instead, Scudder merely cites to facts in the record that suggest that Steinecke was a central character in Scudder's overall theory of the case. This is insufficient to show that the Circuit Court erred in granting JMOL on this claim against Steinecke, and we decline to construct Scudder's arguments for her.

Scudder, however, has established that the Circuit Court erred in granting Steinecke JMOL on the unfair-or-deceptive-trade-practices claim. "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." HAW. REV. STAT. § 480-2(a) (2008). An act or practice is unfair "when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Balthazar v. Verizon Haw., Inc.*, 109 Hawai'i 69, 77, 123 P.3d 194, 202 (2005). A deceptive act or practice is: "(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material." *Tokuhisa v. Cutter Mgmt. Co.*, 122 Hawai'i 181, 195, 223 P.3d 246, 260 (App. 2009) (quoting *Courbat v. Dahana Ranch, Inc.*, 111 Hawai'i 254, 262, 141 P.3d 427, 435 (2006)) (internal quotation marks and brackets omitted). "A representation, omission, or practice is considered 'material' if it involves 'information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" *Courbat*, 111

Hawai'i at 262, 141 P.3d at 435 (quoting *Novartis Corp. v. FTC*, 223 F.3d 783, 786 (D.C. Cir. 2000)).

Viewing the evidence in the strongest light possible for Scudder, as we must, Scudder presented sufficient evidence for a jury to conclude that Steinecke utilized unfair or deceptive trade practices "by billing for horse care services never agreed to years after they were performed." *See Columbia Chiropractic Grp., Inc. v. Trust Ins. Co.*, 712 N.E.2d 93, 96 (Mass. 1999) (inappropriate and unreasonable billing held to be unfair or deceptive acts or practices).

According to Scudder, in 1997, Steinecke asked Scudder for rent deferment and, when Scudder agreed, told her: "you don't have to pay anything any more." Consistent with that, until February 2005, Scudder claimed that she received no bills for payment from the EKM Defendants. In the summer of 2004, Scudder had a conversation with Pierce and Steinecke in which Pierce stated that "not only did [the EKM Defendants] not have any books, but that they had not done their books for a period of five or six years." Nevertheless, in the spring of 2005, Scudder began receiving invoices from the EKM Defendants in excess of $4,500 each month "for charges that I had never agreed to and I felt that I was being cheated." On July 9, 2005, Scudder sent the defendants a letter objecting to the charges.

According to Scudder, Pierce and Steinecke approached her in July after receiving the letter and explained that they had been charging her for services but not billing her. Scudder asked, "Are you telling me you're charging me to keep my horses there and at the same rate as the people who've given you nothing?" According to Scudder, Pierce responded, "Well, yeah." When Scudder complained that Pierce and Steinecke had "been living for free on my family's land and now you're telling me you're charging me to keep my horses there?" Pierce responded, "Oh, we haven't been living there for free. We've been paying you rent all along." When Scudder questioned what he meant, and despite having told Scudder that they had no books and had not done their books for five to six years, Pierce explained, "Oh, we've been doing it in our books." Scudder testified that

13

Steinecke was not only present at the aforementioned meeting, but that she followed up with Scudder via email, explaining that she and Pierce were continuing to bring their accounts and paperwork up to date.

A reasonable jury could conclude from the evidence presented that Steinecke was involved in a representation, omission, or practice that was likely to mislead Scudder, acting reasonably under the circumstances, into believing that she would not be charged for all of the horse-care services provided to her at full cost. *See Tokuhisa*, 122 Hawai'i at 195, 223 P.3d at 260. A jury could likewise find that Steinecke's acts were "unfair." *See Balthazar*, 109 Hawai'i at 77, 123 P.3d at 202. Such conclusions are all the more possible because that same jury found that there was no meeting of the minds between the parties on the essential terms of oral agreements for horse-care services and that Pierce, who Steinecke worked with in billing Scudder, had engaged in unfair or deceptive acts or practices in connection with the horse-care services provided to Scudder. Thus, we hold that the Circuit Court erred by granting Steinecke JMOL on Scudder's unfair-or-deceptive-trade-practice claim.

Furthermore, the Circuit Court erred by granting Steinecke JMOL on the fraudulent-inducement claim. A fraudulent-inducement claim requires "(1) a representation of a material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies and acts to [his or her] detriment." *Pancakes of Haw., Inc. v. Pomare Props. Corp.*, 85 Hawai'i 300, 312, 944 P.2d 97, 109 (App. 1997) (brackets in original) (quoting *Honolulu Fed. Sav. & Loan Ass'n v. Murphy*, 7 Haw. App. 196, 201, 753 P.2d 807, 811 (1988)). As stated above, Scudder testified that Steinecke told Scudder her, "you don't have to pay for anything anymore." Given the circumstances in which this statement was allegedly made, a factfinder could reasonably conclude that Steinecke induced Scudder to continue to utilize EKM Defendants' services after leading Scudder to reasonably believe that she would not be charged for such services. Therefore, the Circuit Court erred in

granting JMOL in favor of Steinecke on the unfair-or-deceptive-trade-practices and fraudulent-inducement claims.

      B.    Steinecke and E Komo Mai's entitlement to quantum meruit

The Circuit Court awarded Steinecke and E Komo Mai $106,052.62 in quantum meruit for horse-care services, held that Scudder waived her right to unpaid rent until the entry of the Final Judgment, and held that Scudder and EKM Defendants have an agreement setting rent at $1,000.00 per month until 2020 because Scudder ratified the Second Lease Amendment. Scudder claims that the Circuit Court erred by providing Steinecke and E Komo Mai an award in quantum meruit and in concluding that the Lease had been extended to 2020. We agree with Scudder as to the award in quantum meruit and disagree as to the Lease extension.

      1.    Quantum meruit

"Quantum meruit is an equitable claim." *Wagner v. World Botanical Gardens, Inc.*, 126 Hawai'i 190, 203, 268 P.3d 443, 456 (App. 2011). As a general matter, "[t]he basis of recovery on quantum meruit is that a party has received a benefit from another which it is unjust for him to retain without paying therefor." *Haw. Ventures, LLC v. Otaka, Inc.*, 114 Hawai'i 438, 484, 164 P.3d 696, 742 (2007) (quoting *Maui Aggregates, Inc. v. Reeder*, 50 Haw. 608, 610, 446 P.2d 174, 176 (1968)). "[I]f a party derives any benefit from services rendered by another, the law reasonably implies a promise to pay on the part of the one who has received such benefit, such amount as it is reasonably worth." *Id.* (quoting *Maui Aggregates*, 50 Haw. at 610, 446 P.2d at 176).

Here, the Circuit Court found that Scudder received the benefit of horse care and that it would be unjust for her to retain this benefit, awarding Steinecke and E Komo Mai $106,052.62. To the extent that the Circuit Court erroneously granted JMOL to Steinecke on the unfair-or-deceptive-trade-practice claim relating to deceptive billing practices and the fraudulent-inducement claim, as we hold above, the granting of

equitable relief in favor of Steinecke must be vacated.

Furthermore, the equitable award in favor of E Komo Mai must be vacated and the cause remanded for further findings and conclusions of law. A business association has unclean hands, for the purpose of denying equitable relief, if "persons exercising general control over its affairs" have knowledge of the inequitable conduct of those acting on its behalf. *See Associated Press v. Int'l News Serv.*, 240 F. 983, 989 (S.D.N.Y. 1917) (Augustus Noble Hand, J.), *modified*, 245 F. 244 (2d Cir. 1917), *aff'd*, 248 U.S. 215 (1918). While the jury found that Pierce had engaged in unfair or deceptive acts involving his provision of horse-care services, neither the jury nor the Circuit Court found the extent to which such misconduct could be attributed to E Komo Mai.[7] Thus, the equitable award in favor of both Steinecke and E Komo Mai must be vacated and the case remanded for additional proceedings.

Scudder further argues that HRS § 480-12 bars equitable relief. Indeed, "[a]ny contract or agreement in violation of this chapter is void and is not enforceable at law or in equity." HAW. REV. STAT. § 480-12 (2008). Based on the findings of the jury and the Circuit Court, however, it is not clear exactly which services provided to Scudder, for which the Circuit Court also provided an equitable award, were the product of a contract or agreement in violation of HRS § 480-12. This is a question for adjudication on remand.[8]

### 2.    Second Lease Amendment

Scudder argues that the Circuit Court erred in finding, among other things, that Scudder entered into or ratified the

---

[7]    Furthermore, based on our decision today, Steinecke's own alleged misconduct relating to billing, if confirmed by the factfinder, could affect the determination of E Komo Mai's entitlement to equitable relief.

[8]    Scudder also argues that "quantum meruit damages require an agreement, albeit unenforceable, for the services provided." Quantum meruit, however, involves a quasi-contractual relationship. BLACK'S LAW DICTIONARY 1361-62 (9th ed. 2009). But, a quasi-contract "is not a contract at all, but an obligation imposed by the court to bring about justice and equity, without regard to the intent of the parties and *without regard to whether they have an agreement*[.]" 1 WILLISTON ON CONTRACTS § 1:6 (4th ed. 2012) (emphasis added).

1995 lease and various addenda where the jury found that Scudder had only ratified the Second Lease Amendment. Scudder also argues that the extension of the lease until 2020 was error where the jury found that Scudder was fraudulently induced into signing the Second Lease Amendment.

Ratification is "[a] person's *binding* adoption of an act already completed but . . . not done in a way that originally produced a legal obligation." BLACK'S LAW DICTIONARY 1376 (9th ed. 2009) (emphasis added). Ratification "is a question of fact for jury determination." *Guaschino v. Eucalyptus, Inc.*, 3 Haw. App. 632, 640, 658, P.2d 888, 895 (1983).

Here, the jury found that Plaintiff ratified the Second Lease Amendment, which states: "AS OF MAY 1, 2005, TENANT HAS THE OPTION TO RENEW THIS LEASE FOR UP TO 3 FIVE YEAR PERIODS AT A MONTHLY RENT OF $1000.00. THIS AGREEMENT SUPERSEDES ANY PREVIOUS AGREEMENT REGARDING LENTGH [sic] OF RENTAL TERM." While Scudder argues that the jury, in essence, was misled by EKM Defendants' counsel into finding that Scudder ratified the Second Lease Amendment, Scudder does not challenge any of the Circuit Court's jury instructions as being incorrect and otherwise does not establish that the jury was actually misled. Furthermore, Scudder fails to address the significance, or even the terms, of the Second Lease Amendment in either her opening or reply briefs. Without this analysis, Scudder fails to show that the Circuit Court committed reversible error in extending the lease to 2020. Thus, Scudder has not demonstrated reversible error.

C.    Hussey's testimony[9]

Scudder argues that the Circuit Court erred in excluding expert testimony on Hussey's preliminary findings regarding relevant market values of the Subject Property. Pursuant to HRE Rule 702:

---

[9]    Appellees urge us to deny Scudder's USPAP argument on its face because Scudder did not identify the order granting Motion in Limine No. 6 in her notice of appeal. That order, however, was an unappealable interlocutory order that relates directly to the order from which Scudder appealed. Therefore, we will address Scudder's argument with regard to Motion in Limine No. 6. *See* Haw. R. App. P. 4(a)(3); *Ueoka v. Szymanski*, 107 Hawai'i 386, 396, 114 P.3d 892, 902 (2005).

17

> If scientific, technical, or other specialized knowledge
> will assist the trier of fact to understand the evidence or
> to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or
> education may testify thereto in the form of an opinion or
> otherwise. In determining the issue of assistance to the
> trier of fact, the court may consider the trustworthiness
> and validity of the scientific technique or mode of analysis
> employed by the proffered expert.

Haw. R. Evid. 702. "[T]he touchstones of admissibility for expert testimony under HRE Rule 702 are relevance and reliability." *State v. Vliet*, 95 Hawai'i 94, 106, 19 P.3d 42, 54 (2001). The Circuit Court rejected Scudder's attempt to have Hussey testify on the results of his preliminary reports because it apparently found that such reports were unreliable because they were not USPAP compliant.

"[W]e apply an abuse of discretion standard when reviewing a trial court's decision regarding the reliability of expert testimony." *Id.* at 108, 19 P.3d at 56. In this case, we hold that the Circuit Court abused its discretion in prohibiting Hussey from testifying due to non-compliance with USPAP.

"It is well established in this jurisdiction that a witness having the necessary qualifications may give an opinion as to the value of property." *Chung v. Kaonohi Ctr. Co.*, 62 Haw. 594, 609, 618 P.2d 283, 293 (1980), *abrogated on other grounds by Francis v. Lee Enters., Inc.*, 89 Hawai'i 234, 971 P.2d 707 (1999). "The factors considered and the extent of knowledge and reasoning of an otherwise qualified appraiser are matters which go to the weight rather than the competence of his testimony." *State v. Dillingham Corp.*, 60 Haw. 393, 411, 591 P.2d 1049, 1060 (1979) (brackets omitted) (quoting *State ex rel. Kobayashi v. Heirs of Kapahi*, 48 Haw. 101, 114, 395 P.2d 932, 940 (1979)); *see also State v. Fukagawa*, 100 Hawai'i 498, 504, 60 P.3d 899, 905 (2002) ("Once the basic requisite qualifications are established, the extent of an expert's knowledge of the subject matter goes to the weight rather than the admissibility of the testimony." (quoting *State v. Toyomura*, 80 Hawai'i 8, 26 n.19, 904 P.2d 893, 911 n.19 (1995)).

In making its evidentiary ruling, the Circuit Court specifically stated that it was "not addressing Mr. Hussey's

expertise but his written report as submitted." However, we agree with the U.S. Court of Appeal for the Fifth Circuit that an appraiser's compliance with USPAP is not "the sole determining factor as to whether an appraiser's valuation report is reliable." *See Whitehouse Hotel Ltd. P'ship v. Comm'r*, 615 F.3d 321, 332 (5th Cir. 2010). As non-compliance with USPAP was the stated basis upon which the Circuit Court granted Motion in Limine No. 6, the Circuit Court's ruling constituted an abuse of discretion.

D.   The deemed denial of the Fees and Costs Motion is vacated

"A post-judgment order is an appealable final order under HRS § 641-1(a) if the order ends the proceedings, leaving nothing further to be accomplished." *Ditto v. McCurdy*, 103 Hawai'i 153, 157, 80 P.3d 974, 978 (2003). However, "an order is not final if the rights of a party involved remain undetermined or if the matter is retained for further action." *Cho v. State*, 115 Hawai'i 373, 383, 168 P.3d 17, 27 (2007) (quoting *Bocalbos v. Kapiolani Med. Ctr. for Women & Children*, 89 Hawai'i 436, 439, 974 P.2d 1026, 1029 (1999)) (internal quotation marks omitted).

On September 22, 2008, Scudder filed her Fees and Costs Motion pursuant to HRCP Rule 54(d) and various statutory provisions. While the Order Granting in Part Fees and Costs purported to grant the motion as to Scudder's breach-of-contract claim but denied it as to the remainder, the Circuit Court did not say how much money, if any, it was awarding to Scudder. Thus, the Order Granting in Part Fees and Costs is not a final and appealable order. Instead, as no order was entered that fully disposed of the Fees and Costs Motion, the Fees and Costs Motion was deemed denied ninety days after it was filed pursuant to rule. *See* Haw. R. App. P. 4(a)(3).

Scudder argues that the Circuit Court erred in denying her fees and costs based on HRS §§ 480-13(b) and 481A-4(b). Due to our holding that the Circuit Court erred in granting JMOL to Steinecke on Scudder's unfair-or-deceptive-trade-practice and fraudulent-inducement claims, vacating the equitable award in

19

quantum meruit in favor of Steinecke and E Komo Mai, and remanding for further proceedings, we vacate the deemed denial of the Fees and Costs Motion.

V.    Conclusion

The September 5, 2008 Findings of Fact, Conclusions of Law and Order Granting Defendants Frank Pierce, III, Nancy Steinecke and E Komo Mai Sport Horses Motion Regarding Equitable Claims; the September 8, 2008 Final Judgment; and the deemed denial of Plaintiff Gale Scudder's Rule 54(d), Hawaii Rules of Civil Procedure Motion for Attorney's Fees and Costs, filed September 22, 2008, are hereby vacated.  We remand for further proceedings consistent with this opinion.

DATED:   Honolulu, Hawai'i, August 30, 2013.

On the briefs:

Peter Van Name Esser and
William J. Rodsil
for Plaintiff/Counterclaim
Defendant-Appellant.

Robert D.S. Kim
for Defendants-Appellees
and Counterclaimants.

Presiding Judge

Associate Judge

Associate Judge

20